THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

|  |  |
|---|---|
| 1ST SOURCE BANK,<br><br>Plaintiff,<br><br>v.<br><br>COMMERCE & INDUSTRY INSURANCE COMPANY and AIG AEROSPACE INSURANCE SERVICES, INC. (FORMERLY, CHARTIS AEROSPACE INSURANCE SERVICES, INC.),<br><br>Defendants. | Civil Action No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff 1st Source Bank ("1st Source"), for its complaint against Defendants Commerce & Industry Insurance Company and AIG Aerospace Insurance Services, Inc. (collectively, "the Defendants" or "AIG"), states and alleges as follows:

## INTRODUCTION

1. This action arises out of an insurance dispute over the coverage available to 1st Source under the Lienholder's Interest Endorsement to a business aircraft policy, which was sold and issued by the Defendants. 1st Source seeks a declaration of its rights and the Defendants' obligations under the insurance policy, damages for breach of contract for the Defendants' refusal to pay certain losses as required by the insurance policy, damages for breach

of the Defendants' implied covenant of good faith and fair dealing, along with interest, attorneys' fees, costs, and such other further relief as the Court may deem just and proper.

## PARTIES

2.   **Plaintiff.**  1st Source Bank is a state bank organized and existing under the laws of Indiana, which maintains its principal place of business in South Bend, St. Joseph County, Indiana.

3.   **First Defendant.**  Defendant Commerce & Industry Insurance Company ("Commerce") is a New York corporation with its principal place of business in New York.  *See, e.g.*, Complaint, *Commerce & Industry Ins. Co. v. WMS Solutions, LLC*, No. 8:14CV01182, 2014 WL 1572865 at ¶ 2 (D. Md. Apr. 10, 2014).  Defendant Commerce also has a registered agent in Indiana, Corporation Service Company, located at 251 East Ohio Street, Suite 500, Indianapolis, Indiana 46204.

4.   **Second Defendant.**  Defendant AIG Aerospace Insurance Services, Inc. (formerly, Chartis Aerospace Insurance Services, Inc.) is a Georgia corporation with its principal place of business in Georgia.  *See, e.g.*, Complaint, *Chartis Aerospace Ins. Servs., Inc. v. AUA, Inc.*, No. CV-12-H-1087-S, 2012 WL 6661457, at ¶ 1 (N.D. Ala. Apr. 12, 2012).

## JURISDICTION AND VENUE

5.   **Nature of the Action.**  This is an action for a declaratory judgment brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure; for damages for breach of contract; for contractual bad faith; and for further necessary and appropriate relief.

6.   **Diversity Jurisdiction.**  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between

1st Source and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest, attorneys' fees, and costs.

7. **Personal Jurisdiction.** This Court has personal jurisdiction over the Defendants because they are authorized to do business in Indiana, transacted and continue to transact the business of selling insurance in Indiana, and have otherwise purposefully availed themselves of this jurisdiction. Moreover, Defendant Commerce has a registered agent in Indiana, Corporation Service Company, located at 251 East Ohio Street, Suite 500, Indianapolis, Indiana 46204.

8. **Venue.** Venue is proper in the United States District Court for the Northern District of Indiana under 28 U.S.C. § 1391(b)(1) because the Defendants are authorized to do business, and do business, in this district, and this Court has personal jurisdiction over the Defendants. Venue also is appropriate under § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## THE LOAN

9. **The Loan Agreement.** On January 28, 2011, 1st Source entered into a Loan and Security Agreement (the "Loan Agreement") with Wells Fargo Bank Northwest, National Association, not in its individual capacity but solely as the Owner Trustee under a Trust Agreement for the benefit of Quest Trading, LLC dated June 25, 2009 (the "Borrower").

10. **The Loan Amount.** Pursuant to the Loan Agreement, 1st Source made a six million dollar ($6,000,000) loan to the Borrower.

11. **The Collateral.** A Dassault Falcon 2000 aircraft, tail number N955SL (the "Collateral"), served as security for the loan.

12. **The Loan Conditions.** Pursuant to the conditions of the Loan Agreement, the Borrower was required to insure the Collateral. Pursuant to the conditions of the Loan

Agreement, the Borrower was also required to obtain additional protection for 1st Source's distinct interests as the lienholder on the Collateral.

## THE GOLD MEDALLION COMPREHENSIVE BUSINESS AIRCRAFT POLICY

13. **The Aircraft Policy.** AIG sold a "Gold Medallion Comprehensive Business Aircraft Policy," No. GM 003791841-03, to the Borrower and Quest Trading, LLC (the "Named Insureds") for the policy period July 16, 2011 to July 16, 2012 ("the Aircraft Policy"). A true and correct copy of the Aircraft Policy is attached hereto as Exhibit 1.

14. **Scheduled Aircraft.** The Collateral is identified as the Scheduled Aircraft in the Aircraft Policy.

15. **Coverage under the Aircraft Policy.** The Aircraft Policy contains an "Extended Coverage Endorsement" that provides, among other things, "War Risk Coverage for Aircraft Physical Damage Coverage" ("Endorsement 13"). Endorsement 13 provides in pertinent part:

### WAR RISK COVERAGE FOR AIRCRAFT PHYSICAL DAMAGE COVERAGE

> [AIG] will pay for the physical loss of or Physical Damage to any Scheduled Aircraft . . . that is caused by an Occurrence during the policy period arising out of any of the following perils . . . .
>
> (e) confiscation, nationalization, seizure, restraint, detention, appropriation, requisition for title, use by, or under the order of any government, public or local authority, whether civil, military or defacto . . . .

Endorsement 13 further states: "This section also covers the physical loss of or Physical Damage to a Scheduled Aircraft while that Scheduled Aircraft is outside the control of the Insured because of any of the above perils. The Aircraft will be covered until its safe return to the Insured."

4

16. **The Lienholder's Interest Endorsement.**  The Named Insureds also purchased the Aircraft Policy with an added Lienholder's Interest Endorsement ("the Lienholder Endorsement").  The Lienholder Endorsement identifies 1st Source as the "Lienholder" for purposes of coverage under the endorsement.

17. **Coverage under the Lienholder Endorsement.**  The Lienholder Endorsement protects and provides coverage for 1st Source's interests in the Collateral irrespective of any act by the Named Insureds. The Lienholder Endorsement provides in pertinent part:  "As to the interest of the said Lienholder only, the insurance afforded by any Physical Damage Coverage of this policy shall not be invalidated by any act or neglect of the Named Insured nor by any change in the title or ownership of the Aircraft . . . ."

18. **Utah Law Controls.**  The Aircraft Policy is subject to Utah law. The Aircraft Policy was issued to the Named Insureds at their Utah address, delivered to the Named Insureds in Utah, and insured Collateral registered in Utah.  On information and belief, the premiums were also paid by the Named Insureds in Utah.

19. **Utah Amendatory Endorsement.**  The Aircraft Policy also includes an "Utah Cancellation/Nonrenewal Amendatory Endorsement."

20. **State Statutes Provision.**  The Aircraft Policy further contains a "State Statutes" provision that states:  "If the terms of this policy are in conflict with or inconsistent with the statutes of any state where this policy is in effect, we will conform to the minimum standards of those statutes."

<u>**THE UNDERLYING EVENTS**</u>

21. **Tax Evasion Allegations.**  The Receita Federal do Brasil ("RFB"), the Brazilian tax authority, has accused the Named Insureds of attempting to evade Brazilian import taxes through their ownership and operation of the Collateral.

5

22. **Seizure of the Collateral.** On June 20, 2012, the RFB seized the Collateral as part of its investigation into the tax evasion allegations and commenced an administrative proceeding against the Named Insureds.

23. **The Civil Proceeding.** In September 2012, the Named Insureds initiated a parallel civil proceeding in Brazil to refute the allegations by the RFB and secure the release of the Collateral ("the Civil Proceeding"). The Civil Proceeding is still pending as of the date of this Complaint.

24. **"Permanent" Confiscation and Auction Attempts.** The RFB escalated the seizure of the Collateral to what it deemed a "permanent" confiscation in April 2013, and took steps to dispose of the Collateral through public auctions in August and September 2014.

25. **Notice of Lienholder Interest.** In advance of the scheduled auctions, 1st Source placed RFB on notice that any sale of the Collateral would be subject to 1st Source's interest in the Collateral.

26. **Suspension of the Auction Attempts.** On September 18, 2014, a Brazilian court ordered that all further attempts to auction the Collateral be suspended pending a decision in the Civil Proceeding. In the meantime, the Collateral remains subject to confiscation by RFB and outside the control of the Named Insureds.

27. **The Failure to Pay.** The Named Insureds were given a reasonable opportunity to restore the Collateral and cure the numerous defaults triggered by the seizure, confiscation, and degradation of the Collateral while in RFB custody. The Named Insureds exacerbated the situation, however, by failing to make payments in accordance with the Loan Agreement.

28. **The Demand and Acceleration Notice.** On October 9, 2014, 1st Source issued a Demand and Acceleration Notice to the Named Insureds, citing defaults for their (a) non-

6

payment of the loan, (b) failure to pay a tax, assessment, levy or charge on or against the Collateral by the Brazilian government, (c) failure to keep the Collateral safe and secure by failing to prevent the seizure and detention of the Collateral by the Brazilian government, (d) failure to regain possession and control of the Collateral being appropriated and confiscated by the Brazilian government, (e) failure to do all acts necessary to protect the Collateral, and (f) failure to keep the Collateral in good order, repair, and operating condition.

29. **The Named Insureds' Default.** The Named Insureds remain in default and the loan has not been satisfied. As of the filing of this Complaint, the total amount in default is well in excess of $4.3 million.

## THE INSURER'S CLAIMS HANDLING ACTIVITIES AND DENIAL OF COVERAGE

30. **Tender of the Claim to AIG.** On October 10, 2014, 1st Source tendered an insurance claim concerning its interests in the Collateral and requested coverage under the Lienholder Endorsement from AIG. At that time, AIG was already in possession of substantial information and documents related to the underlying events based on AIG's handling of a prior claim by the Named Insureds under the general terms of the Aircraft Policy (i.e., not the Lienholder Endorsement). Nonetheless, 1st Source requested that AIG provide any additional forms or instructions necessary for submitting a supplemental proof of loss and expeditiously resolving the claim under the Lienholder Endorsement.

31. **AIG's First Request for Information.** On November 10, 2014, AIG responded and instructed 1st Source to provide various documents that AIG purported were necessary to evaluate coverage for the claim.

32. **The Supplemental Proof of Loss.** After compiling the extensive documents requested, 1st Source submitted to AIG a detailed supplemental proof of loss on January 22,

7

2015, along with over nine hundred pages in additional documentation.  1st Source reiterated its request for coverage under the Lienholder Endorsement at that time and demanded prompt payment of the total amount of the loan in default from AIG.  1st Source also indicated its willingness to assign, deliver, and convey its interests in the Collateral to the extent that AIG promptly paid the claim, pursuant to the terms of the Lienholder Endorsement.

33. **AIG's Response to the Proof of Loss.**  AIG acknowledged that it had reviewed the documents requested to evaluate the claim by letter dated March 10, 2015.  Nonetheless, AIG's response provided no evaluation of the claim or determination concerning the coverage available to 1st Source whatsoever.  Rather, AIG posed additional questions that were utterly irrelevant to the terms of the Lienholder Endorsement and coverage for 1st Source's claim.

### AIG BREACHED ITS CONTRACT BY FAILING TO PROVIDE COVERAGE

34. **1st Source Satisfied all Conditions of the Policy.**  1st Source has satisfied all applicable conditions of the Aircraft Policy and repeatedly requested that AIG provide the coverage owed under the Lienholder Endorsement.

35. **The Defendants' Breach.**  AIG refuses to acknowledge or provide coverage for 1st Source's loss.  AIG's refusal to provide coverage or make any payments pursuant to the Lienholder Endorsement constitutes a breach of the Aircraft Policy.  Moreover, AIG failed to diligently investigate the facts of 1st Source's claim for coverage and failed to act promptly and reasonably in deciding the claim.

### FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT: ALL DEFENDANTS)

36. 1st Source restates and realleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

37.     1st Source has fully complied with all of the terms and conditions of the Aircraft Policy, and 1st Source is entitled to coverage for its claim under the Lienholder endorsement.

38.     The Defendants have refused to acknowledge the coverage owed under the Lienholder Endorsement and have failed to pay 1st Source's claim.

39.     The Defendants' refusal to acknowledge coverage and pay 1st Source's claim constitutes a breach of the Lienholder Endorsement.

40.     The Defendants' breach has proximately caused 1st Source harm for which 1st Source is entitled to damages in an amount to be determined at trial, but in any event, exceeding $75,000, exclusive of interest, attorneys' fees, and costs.

41.     By reason of the foregoing, the Defendants are liable to 1st Source for the total amount of the covered loss (which continues to accrue) and for additional damages 1st Source has sustained as a result of the Defendants' breach of the contract.  The exact amount of such damages include, but are not limited to:  amounts 1st Source has incurred in establishing the extent of its loss; pre- and post-judgment interest; and attorneys' fees, costs, and disbursements 1st Source has incurred to date and may incur in the future in prosecuting this action to obtain the benefit of its insurance coverage.

**SECOND CAUSE OF ACTION**
**(BREACH OF DUTY OF GOOD FAITH AND**
**FAIR DEALING: ALL DEFENDANTS)**

42.     1st Source restates and realleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

43.     Implied in the Aircraft Policy and Lienholder Endorsement is a covenant that the Defendants would act in good faith and deal fairly with 1st Source, would do nothing to interfere

9

with the rights of 1st Source as the Lienholder, and would give at least the same level of consideration to 1st Source's interests as the Defendants gave their own.

44. The Defendants breached the implied covenant of good faith and fair dealing by failing to diligently investigate 1st Source's claim for coverage under the Lienholder Endorsement.

45. The Defendants breached the implied covenant of good faith and fair dealing by wrongfully denying 1st Source's claim for coverage thereunder.

46. The Defendants breached the implied covenant of good faith and fair dealing by failing to fulfill their obligation not to impair the rights of 1st Source—the lienholder under the Lienholder's Endorsement.

47. The Defendants breached the implied covenant of good faith and fair dealing by failing to comply with Utah Insurance Department Regulations and insurance industry standards.

48. The Defendants breached the implied covenant of good faith and fair dealing by giving greater consideration to their own interests than 1st Source's interests.

49. The Defendants' breach of their implied covenant of good faith and fair dealing has proximately caused 1st Source harm, for which 1st Source is entitled to damages in an amount to be determined at trial, but in any event exceeding $75,000, exclusive of interest, attorneys' fees, and costs.

50. By reason of the foregoing, the Defendants are liable to 1st Source for the total amount of the covered loss (which continues to accrue) and for additional damages 1st Source has sustained as a result of the Defendants' breach of the contract. The exact amount of such damages include, but are not limited to: amounts 1st Source has incurred in establishing the extent of its loss; consequential damages; pre- and post-judgment interest; and attorneys' fees,

costs, and disbursements 1st Source has incurred to date and may incur in the future in prosecuting this action to obtain the benefit of its insurance coverage.

**THIRD CAUSE OF ACTION**
**(DECLARATORY JUDGMENT: ALL DEFENDANTS)**

51.     1st Source restates and realleges all of the foregoing paragraphs of this Complaint as though fully set forth herein.

52.     1st Source has fully complied with all of the terms and conditions of the Aircraft Policy, and 1st Source is entitled to coverage for its claim under the Lienholder endorsement.

53.     The Defendants have refused to acknowledge that 1st Source's claim is covered under the Lienholder Endorsement.

54.     A justiciable controversy exists between 1st Source and the Defendants as to their respective rights and obligations under the Lienholder Endorsement, and 1st Source seeks a judicial determination to resolve the present controversy over the coverage owed under the Lienholder Endorsement.

55.     1st Source is entitled to a judicial declaration that the Defendants are obligated to reimburse 1st Source for the full extent of its loss under the Lienholder Endorsement.

56.     The issuance of declaratory relief by this Court would terminate some or all of the existing controversy between the parties.

**WHEREFORE**, 1st Source respectfully prays for an Order of this Court declaring, determining, and providing as follows:

a.      Entering judgment for 1st Source and against the Defendants, ordering the Defendants to reimburse 1st Source for its loss;

b. Entering judgment for 1st Source, ordering the Defendants to pay all of 1st Source's compensatory damages arising or resulting from the Defendants' refusal to perform their contractual obligations;

c. Entering a judgment for 1st Source, ordering the Defendants to pay all of 1st Source's compensatory and consequential damages arising or resulting from the Defendants' violation of its implied covenant of good faith and fair dealing.

d. Entering a declaratory judgment that the Lienholder Endorsement provides coverage for 1st Source's loss and the Defendants must reimburse the full extent of 1st Source's loss;

e. Entering a declaratory judgment that the Defendants must pay 1st Source all other damages caused by, or resulting from, the Defendants' breach of their respective obligations under the Lienholder Endorsement;

f. Awarding 1st Source reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action;

g. Awarding 1st Source pre-judgment and post-judgment interest as provided by law; and

h. Providing such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

1st Source hereby requests a jury trial on all claims so triable.

Dated: March 23, 2015

BARNES & THORNBURG LLP

By  /s/   Timothy J. Abeska
Timothy J. Abeska (3998-71)
Alice J. Springer (25105-64)
700 1st Source Bank Center
100 North Michigan Street
South Bend, IN  46601-1632
Telephone:  (574) 233-1171
Facsimile:   (574) 237-1125


James R. Murray (*pro hac vice pending*)
Omid Safa (*pro hac vice pending*)
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, DC 20006
Telephone: (202) 420-8309
Facsimile: (202) 420-2201


Attorneys for Plaintiff 1st Source Bank